IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

vs. Case No. 06-40073-01-SAC

GUADALUPE RIOS-PINELA,

Defendant.

MEMORANDUM AND ORDER

This case comes before the court on the motion to suppress or, in the alternative, motion to dismiss (Docs. 19, 21) filed by defendant Rios-Pinela. The government has responded. (Dk. 26). Defendant is charged with one count of conspiracy to possess with intent to distribute approximately 69.02 kilograms of cocaine, one count of possession with intent to distribute approximately 69.02 kilograms of cocaine, and one count of criminal drug forfeiture.

Defendant contends that the initial stop of his commercial vehicle violated the Fourth Amendment because the trooper had neither probable cause nor reasonable suspicion to believe that he committed a traffic offense, a code violation or a crime. Defendant further contends that all events subsequent to the illegal

stop, *i.e.*, his detention, consent to search and arrest, were illegal as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

An evidentiary hearing was set for September 19, 2006. At that time, counsel for the government and counsel for defendant agreed to submit the case upon the briefs and the stipulated facts, recognizing that the court's resolution of the legality of the initial stop was determinative of all issues raised in the pending motion.[1] Counsel agreed to submit the matter based on the facts established in the Kansas Highway Patrol (KHP) arrest report (government's Exhibit 1), and the KHP videotape of the stop (government's Exhibit 2), both of which were admitted into evidence by the court. Although no testimony was presented, counsel made brief arguments in support of their positions on the controlling issue of law.

**Facts**

Defendant was stopped by Kansas Highway Patrolman Clint Epperly on March 18, 2006, while defendant was driving a truck tractor-semi trailer northbound on I-35, near Emporia, Kansas. Co-defendant[2] Amaro-Tena was the sole passenger in that commercial vehicle. Trooper Epperly is a certified

[1]Although the motions include a discovery issue, counsel for both parties agreed at the hearing that the discovery issue had been resolved and was moot.

[2]Diego Amaro-Tena has previously plead.

Commercial Vehicle Safety Alliance (CVSA) inspector and is required to inspect 50 commercial motor vehicles annually. He first saw the commercial vehicle as it exited the Kansas turnpike in Emporia, Kansas. He noticed that it was from Arizona and that it had an extremely high DOT number, indicating that the trucking company was newly formed. About five minutes later, he saw the tractor-trailer fueling, ran its truck and trailer tags, and learned that they were registered not to the company whose name was on the tractor-trailer, but to two individuals out of Phoenix.

Trooper Epperly left the area to back up another trooper on a stop, then returned to the tollgate where he saw the truck enter the turnpike and drive north. He then stopped defendant's vehicle for the sole purpose of conducting a CVSA inspection.

Remaining facts are included solely as background, as they are immaterial to the controlling issue of the legality of the initial stop. Trooper Epperly asked for and received defendant's Arizona commercial driver's license and passenger Amaro-Tena's fake Arizona identification. Trooper Epperly checked defendant's documents and ran his information through dispatch while defendant sat in the patrol vehicle.

Trooper Epperly conducted the truck inspection, returned defendant's

documents, and told defendant he was free to go. Trooper Epperly then asked defendant whether he could ask him a few questions, and defendant agreed. Trooper Epperly informed defendant of the problem with drugs coming from Phoenix and asked whether defendant had any illegal drugs in the truck. When defendant replied negatively, Trooper Epperly asked defendant for consent to search the vehicle. After defendant consented, Trooper Epperly searched the vehicle and found several bundles of cocaine, totaling approximately 69.02 kilograms, in three duffel bags.

**Initial stop of commercial vehicle**

Defendant first contends that the traffic stop of his commercial vehicle was illegal because the trooper lacked reasonable suspicion that he had committed a traffic infraction or crime. Defendant concedes that the vehicle he was driving on the date in question is a commercial vehicle, but alleges that no Kansas statute permits law enforcement officers to stop any vehicle for a CVSA inspection absent reasonable suspicion or probable cause. The government does not attempt to justify Trooper Epperly's stop on the basis of reasonable suspicion or probable cause that the driver had committed any traffic infraction or crime.

**General law - closely regulated businesses**

Inspections of commercial vehicles are not premised on an officer's

reasonable suspicion that a specific individual is involved in a traffic offense or in criminal activity. Instead, "[a] regulatory search is justified if the state's interest in ensuring that a *class* of regulated persons is obeying the law outweighs the intrusiveness of a program of searches or seizures of those persons." *United States v. Seslar*, 996 F.2d 1058, 1061 (10th Cir.1993). As the Tenth Circuit recently held in examining Kansas' commercial vehicle regulatory scheme:

> a regulatory inspection is not premised on an officer's on-the-spot perception that he has an individualized suspicion that the specific individual to be seized and searched is involved in criminal activity. An administrative search is instead premised on the individual subject to the warrantless seizure and search knowingly and voluntarily engaging in a pervasively regulated business, and on the existence of a statutory scheme that puts that individual on notice that he will be subject to warrantless administrative seizures and searches.

*United States v. Herrera*, 444 F.3d 1238, 1246 (10th Cir.2006). Motor carriers of property for hire in Kansas are pervasively regulated by the laws of Kansas. *State v. Williams*, 8 Kan.App.2d 14, 20 (1982). By driving a truck tractor-semi trailer through Kansas, defendant subjected himself to the laws regulating motor carriers.

The Fourth Amendment remains relevant to regulatory inspections, but neither probable cause nor individualized suspicion is required. Instead, under the prevailing law, it is permissible for law enforcement officers to stop commercial vehicles in Kansas without suspicion that any traffic offense has been committed.

> "[T]he Fourth Amendment's prohibition against unreasonable searches [still] applies to administrative inspections of private commercial property." *Donovan v. Dewey*, 452 U.S. 594, 598, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981). But under the Fourth Amendment, an administrative search is very different from a search based upon individualized suspicion.
>
> A regulatory search ··· does not require probable cause as defined traditionally by the courts. In general, probable cause, and the less stringent standard of reasonable suspicion, require particularized suspicion-that is, the officer must have some articulable basis to believe that the individual to be searched or seized has committed or is committing a crime. In contrast, a regulatory search is justified if the state's interest in ensuring that a class of regulated persons is obeying the law outweighs the intrusiveness of a program of searches or seizures of those persons. (Citation omitted.)

*Herrera*, 444 F.3d at 1243.

A three-part test is used to determine whether a warrantless inspection in a closely regulated business is reasonable.

> First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be necessary to further the regulatory scheme····Finally, the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

*Herrera*, 444 F.3d at 1244, quoting *New York v. Burger*, 482 U.S. 691, 702-03(1987).

**Application - Kansas motor carrier inspection laws**

In applying the three-part *Burger* test to the present case, the court first asks whether a "substantial" government interest is served by the regulatory scheme pursuant to which the inspection was made.

> [T]he public has substantial interests that are in need of protection. Trucks carrying large cargos present a substantial hazard if not operated in a safe condition or if operated by sleepy or ill drivers, and this is particularly so when transporting cargo such as nuclear material, explosives, petroleum products, chemicals and other hazardous materials. The potential for a catastrophe is much greater than that represented by passenger cars, and considerably more is at stake than if merely checking the license of an automobile driver.

*State v. Williams*, 8 Kan.App.2d 14, 19-20 (1982). Thus a substantial government interest in safety is served by the regulatory scheme pursuant to which Trooper Epperly conducted the CVSA inspection of defendant's commercial vehicle.

Secondly, the court asks whether the warrantless and unannounced inspection conducted by Trooper Epperly was necessary to further the regulatory scheme. The court believes that if such inspections are to be effective they must of necessity be unannounced. *See Williams,* 8 Kan.App.2d at 21 (noting inspection checkpoints are ineffective because "when an inspection point becomes known, a violation is corrected prior to the inspection or an alternate route is taken and the inspection station is simply bypassed.")

Lastly, the court determines whether the regulations of the trucking industry in Kansas perform the two basic functions of a warrant, as *Burger*

requires. Notice of a kind normally provided by a warrant is given by virtue of the state statute which informs the driver of any motor vehicle owned or operated by a private or public carrier that he may be required by a state trooper to stop and submit such vehicle to an inspection to determine compliance with the relevant laws and rules and regulations. *See* K.S.A. § 74-2108(b) (authorizing members of the Kansas highway patrol to execute and enforce the laws of this state relating to public and private motor carriers and vesting them with the power and authority to require the driver of any motor vehicle owned or operated by any such carrier to stop and submit such vehicle to an inspection to determine compliance with such laws and rules and regulations). Additionally, the trooper's authority is appropriately limited by statute to determining whether there is compliance with the law and the rules and regulations furnished to and known by the commercial business being inspected. *See Williams*, 8 Kan.App.2d at 22.

Because the Kansas regulatory scheme satisfies the *Burger* three-part test, no Fourth Amendment violation can be shown by the trooper's initial stop of defendant's commercial vehicle. Defendant's remaining claims of error, which are premised upon the fruit of the poisonous tree doctrine and presume the illegality of the initial stop, necessarily fail as well.

IT IS THEREFORE ORDERED that defendant's motion to suppress

or, in the alternative, motion to dismiss (Dk. 19/ 21) is denied.

Dated this 20th day of September, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge